May it please the court, my name is Steve McCallin. I'm going to try to stay away from acronyms in this case. We're dealing with an agency that lives on acronyms. I can handle ALJ, but if you go beyond that it might be... PDQ. Yeah, yeah. This is an enforcement proceeding brought by the Occupational Safety and Health Administration against Walmart's distribution center in Alachua, Florida. Walmart has a number of these centers across the United States. They're huge, as you can imagine, and it also involves citations involving the blood-borne pathogen standard, also called BBP, that OSHA adopted from guidelines from the Center for Disease Control, which is part of the public health service, United The Center for Disease Control has no rulemaking authority and no ability to enforce anything. But they do, based upon medical and scientific evidence, come up with guidelines or recommendations and how to deal with various things. And they have for hepatitis B and other potentially infectious material that people come into contact with when they are involved in primarily health care working situations. And when they adopted these guidelines, when OSHA did in the early 1990s, is when you went to your dentist's office and they had the plastic bags all around everything that they used, because that was to prevent blood getting into somebody's system. Now the statute has two types of regulations, 6A and 6B. 6A is the typical standard where in a workplace, if you have fall protection issues, you put up a guardrail or you give somebody a safety lanyard. 6B, particularly 6B-5, is for health and other related standards. And OSHA is directed by Congress when they issue a 6B-5 standard to use the highest degree of protection to prevent exposure to a dangerous substance. Now let's use the fall protection example as an issue. You put up a guardrail or you give somebody a safety belt to prevent the hazard. And in connection with the blood-borne pathogen standards, the guidelines are the recommendations from the CDC as to a series of vaccination shots that you can take if there's a potential for being exposed to blood in the workplace. But unlike the fall protection standards, when somebody falls, they get hurt if they don't have the HBV vaccination shots and you get exposed, you can take it after the fact and you're going to be okay. As a matter of fact, it's recognized by OSHA itself in several of its directives and interpretive guidances that if you are unable or for some reason do not provide these vaccinations to a potential person who may be exposed to blood-borne pathogen issues, you can always do it after the fact. As a matter of fact, there's nothing in the guidelines that says you're supposed to do it as immediately as possible, but there's nothing in the guidelines that says anything about when it has to be done. It's one of these vaccinations that once it happens, you're going to be okay. You're going to be fine. It can still be effective. As a matter of fact, you can go to work under the guidelines and work for a period up to 10 days without even having the vaccination. That's one of the citations that Walmart got here. Now, so it's clear in healthcare areas, not so clear in the general industry. Since it does apply to all industries that have potential exposure, OSHA has recognized this in the directives. As a matter of fact, there's two directives by two different enforcement directorate program advisors in R2 and R6 and the exhibits in the case that says that there's a lot of flexibility in issuing these things. And if after the fact, you are working and you get exposed, just get the vaccine. There'll be a no violation of the standard. Or if you have people that are like in this situation occasionally rendering first aid, you're basically exempt from issuing the string of three doses of the vaccination that are supposed to come in a series of recommended intervals. And you just administer the vaccine after someone's been exposed. Counsel, does that depend upon whether the collateral exemption applies or you're saying that that's within their discretion regardless? No, it is specifically their interpretation of the standard is that if the collateral duty exemption applies, you don't have to issue the series of vaccinations. You only issue it once they've been exposed. The blood borne pathogen standard, your honor, has more than just the vaccination. It's got PPE, it's got training. All the employees at Walmart that were these CERT providers, the first aid providers, had that kind of training and protections. As a matter of fact, there's only two individuals that testified in the control bleeding. But they weren't exposed, therefore they didn't have to have the vaccine because of the fact that they wore a shield, they had gloves, they washed their hands afterwards and used sanitary things so they didn't even get exposed. So that individual didn't request and didn't need to even be offered the vaccination. Now, one other thing that's very important is that you can only offer the vaccination to an employee. They don't have to take it. And that doesn't disqualify them even under the guidelines from working in a first aid situation like this. Counselor, walk me through the legal analysis here. So if the collateral duty exemption applies, don't we have to overcome the fact that there was a factual finding made that the care was provided in a separate facility, which would take you out of that exemption and it's pretty high standard of review on that factual finding? Well, there is and there isn't because Judge Joyce, who is the Administrative Law Judge, her decision was not adopted by the Review Commission and the Review Commission is the ultimate finder of fact. And what that means in the administrative procedures of the Occupational Safety and Health Review Commission, it is not even binding on another judge, Administrative Law Judge. It has no precedential value. But for purposes of judicial review, isn't her decision the final decision of the agency in this case? It's the final order of the agency. Whether it's binding on another ALJ in another case is different from whether it's the ultimate finding of the agency in this case. To trigger the time period to seek review in the Court of Appeals? Well, no, to trigger the standard of review for findings of fact. Well, the substantial evidence based upon the record basically is what most administrative rulings are reviewed by. And that's correct. That's the standard of review that we have here. All right. So can you go back to the question then, was there a finding about... The standard, the collateral duty exemption says that the... Well, first of all, these people it was found in the record, they only respond about once or twice a year. And it's about a 30 minute event. And they are strategically, there's about 21 of them at this particular workplace and they're strategically located on shifts. They have shift work and things like that. So there may be one or two at the site at any given time. Now, if there's an injury, because the exemption says generally at the place that the incident happened and there's no explanation to that. Our position is the place that it happened was the distribution center. The judge said, no, it has to be where you find the employee hurt. But the first aid that they provide or the care that they provide is not always the same. The employee can walk to the CERT room, which is basically a room that has... It doesn't have an x-ray machine. It doesn't have anything. It's just a room where they can go and be private and they can handle it there. Or they do it right at the area where someone may be seriously injured. Fortunately, that doesn't happen very often. But if you think about it, if you accept the judge's interpretation this way, the same day the hazard duty exemption would apply if the CERT member went out into the distribution center and put a Band-Aid on a cut where the worker was working. But then the next trip, the hazard duty exemption wouldn't apply if she met the injured employee in the CERT room. And that's why we don't think that's entitled to any logical deference whatsoever. I believe I'll save the rest of my argument for rebuttal. Thank you. All right. Very well. Mr. Hecker, we'll hear from you. May it please the court. I'm Scott Hecker representing the Secretary of Labor. If you'll permit me, I'd like to address the collateral duty policy first, since that was just discussed in substantial detail. The policy itself is actually not memorialized in the BBP, the Bloodborne Pathogen Standard, Your Honors. It's included in OSHA's enforcement procedures for the occupational exposure to bloodborne pathogens. And even if the collateral duty policy constituted a binding exception, which the Secretary asserts that it does not, Walmart fails to meet the policy's criteria here, based on the facts and the record. Now, the policy, the purpose of the exposure guidance is to establish policies and provide clarifications to ensure uniform inspection procedures are followed when conducting inspections to enforce the standard. This is the collateral duty exemption you're talking about? Yes, it's an enforcement policy. It's included in an enforcement directive to OSHA staff to ensure consistency in inspections when they're executing inspections to enforce the standard. It's not in the standard itself, this policy. So the company is saying, under your enforcement procedures, there should not have been an enforcement action here. And your first order position is, well, even if we went contrary to our enforcement guidelines, that's not enforceable by the courts? Well, my first order position is actually it doesn't apply to these facts. But I'm also noting that the enforcement procedures don't carry the force and effect of law. And they actually explicitly read in the enforcement procedures that OSHA's restatement, clarification, or explanation of the requirements of the standard does not amend the standard or create- Slow down. Sorry. Does not create new legal duties, obligations, or defenses. And the guidance itself reads that, that this does not create rights or duties. It's a policy of OSHA's. But why do we have to get into whether the exception applies if it's not even something that a company can enforce against the secretary? Yes, Your Honor. You want to argue it the other way? It's asserted by Walmart. But my suggestion is, even if it were to apply here, even if it were found to be an exemption under the standard, the policy isn't met here. The facts of the case do not- All right. Well, if you want to argue it that way, go ahead. Yes, Your Honor. And I'll point to the facts that do not support the application here. The policy requires that employees designated to render first aid, as the serious injury response team members were here, must respond solely to injuries resulting from workplace incidents, generally at the location where the incident occurred, as noted by Walmart's counsel. The ALJ pointed to the fact that the location where the injury occurred must refer to a place more specific than the entire facility, where that provision would be superfluous. And if that fact had happened, then the collateral duty exemption would have applied, right? Well, there are multiple provisions. And we would assert that not only was the location, as the judge found at issue, that also the record evidence demonstrates that the third provision, noting that employers must provide the HPV vaccine to unvaccinated employees with occupational exposure, even in the presence of blood, not just in exposure incidents. That's also not met here. Walmart's counsel actually indicated a time when an employee was in the presence of blood, but she didn't report because she didn't feel she was exposed. And there's a number of points in the record on that testimony by CERT team employees, as well as the senior director of compliance and safety. You're suggesting that we should just forget about the collateral duty exemption. It's not even applicable here. That's correct, Your Honor. I'm saying if it's not applicable here, it's hard for me to understand when it would be. Well, Your Honor, I think it could be applicable where companies, for example, with regard to the third provision that I just referenced, where a company's bloodborne pathogens training and their exposure control plan actually address circumstances where there is the mere presence of blood, as opposed to exposure incidents, which are defined in 1030B, 1910-1030B, under the regulations. It's different to just have blood present versus being exposed. And there's testimony in the record about the difference between exposure and presence. For example, Michael Trustee, the senior director of compliance and safety, testified exposure would be where a person has had blood on their skin, an open place on their skin, mucous membranes such as nose, mouth, and eyes. Presence of blood would just be where there's presence of blood. So there is a distinction there. It's noted both in the interpretive letters referred to by Walmart's counsel and in the publicly available guidance, the internal enforcement guidance for directing inspections that the secretary referenced is also in the record. It's at appendix 673 is where the relevant portion applies. But we would suggest, based on the facts, that neither the location element nor the presence of blood element are met in the collateral duty to apply the collateral duty policy here. Not to preclude it from ever applying. It's guidance that OSHA has put out in those interpretive letters in, I believe, 1997 and the compliance directive, I believe, was issued in 2001. So OSHA has had this policy out there, has had it out there for guidance for its inspectors, its co-shows. But here it does not apply. Walmart does not meet the facts. It's not a binding exemption. And even if it were, they do not meet the facts here, Your Honor. It's not a binding exemption? Because it's not part of the statute or the regs, Your Honor. Regulations, Your Honor. It's merely in policy. You mean enforcement policy? It's an enforcement policy, correct, guidance for inspectors. So you're saying there could be a violation that you would, that the department would not enforce against? Is that the way you would think of it? It would be treated as a de minimis violation. So there would be no penalty and no citation issued, Your Honor. If they met the facts. But it would, strictly speaking, violate the standard? Yes. But based on the determination made by OSHA, the additional protections, including making sure you report and offer the vaccine to people merely exposed to blood, not just in exposure incidents, those additional protections still serve the purposes of the act. So the enforcement policy still serves the purposes of the act where all these provisions are met. Again, the secretary asserts the facts here demonstrate Walmart did not meet them, either the location requirement or that third requirement. Have you ever had a case where the facts didn't meet the exemption and the inspector nonetheless proceeded and there was a litigation over whether it was binding? I can't speak to that, Your Honor. I could look into that and provide additional information if the court would like, but I  can't speak to that. Well, I just wondered if there were any precedent on that question. So go ahead. Yes, Your Honor. Now, with regard to that citation, Citation 2, that was issued under 29 CFR 1910-1030-F2I, Walmart supervisor Keith Hall, who was responsible for ensuring compliance with Walmart's BBP program, the Bloodborne Pathogen Program, admitted that he failed to offer the HBV vaccine to cert employees. Hall's admission standing alone established the secretary's prima facie case. The ALJ relied on this admission in addition to corroborating evidence showing that Walmart lacked documentation indicating that at least seven employees had either received the first dose of vaccination, been offered that, or signed the declination letter that Walmart's counsel referred to. There were no records on this point, but that is supplementary to the fact that Walmart's supervisor admitted to the violation. It was properly classified, this citation was properly classified as a repeat, as it was issued under the same regulation as the prior violation that was issued in 2012 and became a final order of the commission in 2013. That establishes the prima facie case that they were substantially similar, and Walmart did not rebut that prima facie case. Counsel, could we go back to the first citation? Yes, Your Honor. It's my understanding that this is based on the secretary's interpretation, which involves taking a recommended timetable for vaccinations and making that, by incorporation, part of a mandatory rule. Do you have any case authority to support the ability to take a recommendation and make it a mandatory requirement? Yes, Your Honor. And just as a first point, the distinction between standards issued under 6A and 6B was pointed out by opposing counsel, by Walmart's counsel. 6B requires notice and comment, which is the way that this standard, the BBP standard, was promulgated. And actually, OSHA promulgated and accepted, promulgated the standard accepting the CD recommendations because they would provide consistency, be less vague than OSHA's current medical knowledge. That's in the issuance of the rule that Federal Register noticed. Let's suppose that instead of being late with the third shot, they were a day early. Would that violate the regulation? No, Your Honor. I think the regulations are, they indicate that they should, the vaccination should be done on the 0-1-6 schedule. That's, you know, zero months would be the first initial vaccination dose, then at one month, and then at six months. That's six months after the initial dose. They are guidelines, but they are meant to be followed closely. I don't know that one day, I'm not a medical doctor, but I don't know that one day would make a sufficient difference. What the CDC has said is that that third dose provides the maximum seroprotection and appears to provide optimal long-term protection. It protects 15 additional people out of every 100, and it's a serious, you know, the virus,  It can result in death. So, this is a significant and direct, you know, relationship to health, and it's not a trifling violation. With regard to the case support you asked for, Your Honor, Union Oil out of the Ninth Circuit, Pittsburgh, Des Moines Steel out of the third, and Kennecott Copper out of the tenth, all of which are referenced in our brief, support that OSHA can issue rules under 6B to make guidelines or standards mandatory. Now, under 6A, the inapposite case law that Walmart cites, the Hopke case, 6A has to do with standards that were adopted in the first two years of the OSHA Act. The OSHA Act was allowed, specifically Congress allowed OSHA to adopt consensus or national standards in order to set up, in short order, a national framework for safety and health. Those, many of those had shall, should language instead of shall language, and actually I think both parties reference a revocation rulemaking that withdrew a number of those. I think the number was 153 after proposing almost 200 for revocation. And in that revocation rulemaking, OSHA acknowledged that courts have said you can't just say should mean shall if you're going through 6A. OSHA took that under advisement, and as other courts have found, issuing under 6B does allow, if we follow notice and comment rulemaking and respond to comments as we did here, it was in response to comments that OSHA incorporated the CDC recommendations into the BBP standard, we are allowed to do that. We can make these shall standards as opposed to should. I will note, and the Secretary's brief also notes that Walmart waived a number of its arguments, including that the Secretary failed to prove harm would result from missing the third dose. That was statutorily waived under Section 11A of the OSHA Act, 29 U.S.C. 660A, because it was not included in the petition for discretionary review to the Occupational Safety and Health Review Commission. It waived that it didn't have fair notice, and it also waived the argument that these guidelines set minimum as opposed to maximum requirements for administration of the standard. The Secretary respectfully submits to this court that it should uphold the ALJ's decision affirming these two citations, as the ALJ's conclusions are reasonable and supported by substantial evidence. The substantial evidence standard is the appropriate standard for review. The ALJ's ruling became a final order of the Commission when the Commission declined the discretionary review. So it is the final ruling from the Commission on this matter. Unless the court has additional questions, the Secretary will rest on his briefs. All right. Thank you for your argument. Thank you, Your Honor. Mr. Becker, Mr. McCown, we'll hear from you in rebuttal. On the exemption issue, R2 and R6 are the two standard interpretations. They're not enforcement policies. And a standard interpretation, for example, R2 in the record is a letter from an individual asking about the exemption and trying to get information. And it specifically sets forth when OSHA will allow the exemption to exist. And it was reaffirmed. This was by then Directorate of Enforcement Programs Richard Fairfax, and then Tom Galassi took his place, reaffirmed it again. It's still on the website. And we cited cases in our brief that basically say that the public employers are entitled to look at these interpretations of the standards and to rely upon them. If not, why are they there? OSHA has a field operations manual where it tells compliance officers what to do and what not to do, how to do investigations. For example, you're supposed to have an open conference and a closing conference on an inspection. But if you don't do it, it's not fatal to a citation. That provides no private rights to an employer. But this is different. People can rely on this because it's there. And that makes it a lot different than prosecutorial discretion or just an enforcement policy to the field. What's your best case on that, that they're enforceable by a company like you? The best case that we could find is in our briefs, Your Honor. I don't have it in front of me. I don't recall it, quite frankly. With regard to the repeat violation, and I think this is another good example of why the bloodborne pathogen standard is such a peculiar animal, the basis for the repeat citation was a citation issued to a Walmart store. There are no first aid providers there at all. A customer came in, apparently, and in the situation, there was either a kid or somebody else that got sick or whatever. And they have a policy of going out. And their procedure is they have all the right types of anesthetics to put down to destroy anything that's in the fluid, and they clean it up. They don't provide first aid. There's no first aid providers in a Walmart store. They call 911 because they're in local areas. They were cited for not having a policy at all. That's very factually different than what happened at the distribution center. Walmart's compliance policy for BBP, for bloodborne pathogen, on the record, the attorney for OSHA admitted that it was perfectly fine, and so did the compliance officer. So the two citations that are involved here deal with failing to comply with the standard, which OSHA says was the initial 10-day period to make offer to make the vaccine available and to complete the series, the three series. That's in Walmart's policy. And yes, there was a guy that came and testified that he admitted it was his responsibility and he didn't do it. But you don't get to that in either citation if you find that the collateral duty exemption applies and Walmart satisfied it. It's just not there at all. So that makes it go away completely. I mean, the issues of what Walmart waived and what it didn't waive, I think we've addressed that in our briefs. We had an employee misconduct offense. We didn't pursue that after the hearing and the appeal. If there are any other questions, I'll be happy to respond to them. Otherwise, I think I'm complete. Very well. Thank you for your argument. We appreciate the attendance of all counsel. The case is submitted and the court will file an opinion in due course.